UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFFREY THIES,<br><br>              Petitioner,<br><br>vs.<br><br>HENRY ATENCIO,<br><br>            Respondent. | Case No. 1:16-cv-00134-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Petitioner Jeffrey Thies filed a Petition for Writ of Habeas Corpus to challenge his state criminal conviction. (Dkt. 1.) In response, Respondent filed a Motion for Summary Dismissal, seeking dismissal of all Petitioner's claims on procedural grounds. (Dkt. 13.) The Court preliminarily agreed that the claims were procedurally barred and conditionally granted Respondent's Motion. (Dkt. 20.) The Court explained the reasons underlying dismissal, informed Petitioner how to make a factual showing to overcome the procedural bars, and provided him with a response period. Petitioner has filed his response to the Order. (Dkt. 23.)

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 10.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having considered the parties' arguments and reviewed the record, including the

portions of the state court record lodged by the parties, the Court enters the following

Order.

## REVIEW OF PETITIONER'S RESPONSE TO THE
## ORDER OF CONDITIONAL DISMISSAL

### 1. Standard of Law governing Summary Dismissal

When a petitioner's compliance with threshold procedural requirements is at issue,

a respondent may file a motion for summary dismissal, rather than an answer. *White v.*

*Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases

authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it

plainly appears from the face of the petition and any attached exhibits that the petitioner

is not entitled to relief in the district court." The Court takes judicial notice of the records

from Petitioner's state court proceedings lodged by the parties.

### 2. Procedural Background

On June 1, 2011, Petitioner was convicted by an Ada County jury of felony

trafficking in methamphetamine and several misdemeanor crimes—possession of

marijuana, possession of paraphernalia, and two counts of injury to children for

transporting teenaged stepsons in a car containing drugs intended for trafficking. After

entry of judgment, Petitioner pursued a direct appeal, asserting that the state district court

had erroneously denied his motion to suppress evidence of drugs that officers found in his

car after summoning a drug-sniffing police dog. The Idaho Court of Appeals rejected

Petitioner's claim and upheld his conviction and sentences. The Idaho Supreme Court

denied Petitioner's petition for review. (State's Lodgings B-1 to B-10.)

Thereafter, Petitioner pursued a state post-conviction petition. Counsel was appointed for Petitioner in the action. Eventually, the petition was summarily dismissed by the state district court. (State's Lodging C-1.)

Attorney Dennis Benjamin was appointed counsel for Petitioner on appeal of the post-conviction matter; however, counsel withdrew from the case after finding no meritorious issues for appeal. (State's Lodgings D-1 to D-3.) Petitioner filed a pro se appellate briefing raising the following issue: "Did the district court err when it dismissed Mr. Thies['] petition for post-conviction relief on the grounds of ineffective assistance of counsel, i.e., that the effectiveness of counsel was not prejudicial to Mr. Thies['] case." (State's Lodgings D-4, p. 1 (verbatim).)

The Idaho Court of Appeals affirmed the denial of post-conviction relief (State's Lodging D-7), and Petitioner did not file a petition for review with the Idaho Supreme Court. Previously in this case, Petitioner asserted that he filed a petition for review with the Idaho Supreme Court that was denied on March 22, 2016; however, that petition was not included in Respondent's lodging of the state court record. In the Order of conditional dismissal, the Court invited Petitioner to file a copy of any petition for review bearing a filing stamp with his response. He did not do so. The Court returns to its original premise that Petitioner is mistakenly referring to the *Idaho Court of Appeals'* opinion, which was issued on March 22, 2016, and that no petition for review with the Idaho Supreme Court was filed.

Petitioner next filed his federal Petition for Writ of Habeas Corpus, raising the following claims:

- Claim 1: "Violation of the Fourth Amendment to wit; Illegal Search and Seizure."

- Claim 2: "Violation of the Sixth (6) Amendment of the Constitution to wit; Ineffective Assistance of Counsel."

- Claim 3: "Violation of the Fourteenth Amendment and Fifth Amendments to wit; Violation of Due Process."

(Dkt. 1, pp. 3-4 (verbatim).)

Respondent has asserted that Claim 1 is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465, 494 (1976), and that Claims 2 and 3 are procedurally defaulted. The Court will re-examine each claim.

### 3. Review of Claim 1

Petitioner's first claim is a Fourth Amendment unlawful search and seizure claim.

#### A. Standard of Law governing Threshold Procedural Issue

The threshold issue in a Fourth Amendment claim presented in a federal habeas corpus petition is whether the state provided the petitioner an opportunity for full and fair litigation of his claim in state court. *Stone v. Powell*, 428 U.S. at 494. If the federal district court determines that full and fair litigation of the claim occurred, it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment. *Id*.

*Stone v. Powell* requires only the initial opportunity for a fair hearing. Such an opportunity for a fair hearing forecloses this Court's inquiry into the trial court's successive course of action. *See Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986). This threshold inquiry focuses on whether a state procedure allowing for full and fair

litigation existed, not whether defendant actually used those procedures to his advantage. *See Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990). Stated another way, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *see also Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir.), *cert. denied*, 464 U.S. 933 (1983). The petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

The *Stone* Court did not specify a test for determining whether a state has provided an opportunity for full and fair litigation of a claim. The Ninth Circuit has held that, where a habeas petitioner challenges state court application of the law, the reviewing federal court should consider the extent to which the claims were briefed before, and considered by, the state trial and appellate courts. *See Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-1179 (9th Cir. 1990) (citing *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981)), *cert. denied*, 499 U.S. 979 (1991).

### B. Factual and Procedural Background

The pertinent facts underlying Petitioner's convictions were summarized by the Idaho Court of Appeals on direct appeal.

> On the evening of August 11, 2010, a driver made a 911 call to report that he had observed people fighting and yelling in another car while the car was at an intersection, that someone had thrown objects out of the car's window, striking his car, and that a teenaged passenger had jumped out, and then reentered the car. The reporting caller followed the car to a high school parking lot, and at least three law enforcement officers arrived at the school within a few minutes. When the first officer arrived, the two adult

occupants from the car, Jeffrey Thies and Patricia Price, were standing in the parking lot, and the two teenaged passengers had already entered the school to attend a class.

The officers placed Thies and Price in handcuffs and began to question them separately. Price explained that she and Thies had been arguing, that she threw candy and a lighter out of the window during the argument, and that her son got out of the car to retrieve the lighter. Both Thies and Price told the officers that their argument did not involve physical violence. Officer Vogt ran a background check on Thies, discovered that his driving privileges had been suspended, and began to question him about driving on a suspended license. While doing so, Officer Vogt noticed that Thies appeared to become nervous when another officer began looking into the windows of Thies's car. Officer Vogt asked for Thies's consent to search the car, which was denied. Officer Vogt called for a narcotics detection unit, at which point Thies was placed in the backseat of Officer Vogt's patrol car. Officer Lindley subsequently arrived with a dog trained to detect the presence of narcotics. The dog alerted on the passenger door of Thies's car.

(State's Lodging B-7, pp. 1-2.)

Officers then searched the car and discovered marijuana, methamphetamine packaged and divided into four baggies of four smaller baggies each, and drug paraphernalia, resulting in the criminal charges that underlie this action. As the basis for his suppression motion, Petitioner asserted that the officers quickly completed their investigations into the primary issues for which Petitioner was detained—domestic violence and malicious property—but then simply stalled while they waited for a drug dog to arrive on the scene. (State's Lodging A-1, p. 71, 81.)

At the start of the suppression hearing, the state court noted that it would take judicial notice of the preliminary hearing transcript, that it had reviewed the tapes of the 911 call, that it listened to the three audio tracks, and that it reviewed 39 photographs taken at the scene as hearing exhibits. (State's Lodging A-5, p. 5.) At the hearing, the

parties seemed to agree—because the record was clear—on several points: (1) Officer Vogt called for a drug dog about 12 minutes after arriving at the school parking lot, and the dog arrived at the scene 27 minutes after the 911 call about the incident was made; (2) the officers had reasonable suspicion to detain Petitioner to investigate whether an act of domestic violence or malicious injury to property occurred; and (3) the officers had reasonable suspicion to investigate and prepare a citation for driving without privileges after they obtained the results of Petitioner's background check. (State's Lodgings B-7, pp. 3-4; A-5.)

Conflicting evidence about the timing and reasons for the events was presented at the evidentiary hearing. In addition to the audio tracks and physical evidence, Petitioner testified, his passenger/girlfriend Patricia Price testified, and Officer Daniel Vogt testified at the hearing.

Ms. Price testified that she was handcuffed and then released, and then handcuffed a second time before the dog arrived. (*Id*., pp. 22-24.) She testified that 20 minutes went by between the handcuffing incidents. However, the state district judge told Price, "the audiotape suggests otherwise." (*Id*., p. 23)

Petitioner testified that officers knew right away that he had been driving without privileges. He believed that, after they were denied permission to search his car, they did not write the citation immediately, but did nothing for 15 to 20 minutes. After the dog arrived and identified the location of drugs, Petitioner was arrested, but he did not receive the driving without privileges citation until his arraignment. (*Id*., pp. 47-44.)

Officer Vogt testified that he was the first of several officers to respond to reports of possible mobile domestic violence with children who were trying to jump out of the car. When Vogt arrived at the parking lot, he gave Petitioner an order to put his hands on the police car, but Petitioner did not comply and was acting frantic and confused. That fact, along with Petitioner's loose denim jacket that might have been hiding a weapon, made Vogt concerned. (*Id.*, pp. 80-81.) Vogt forgot to turn on his audio-recording device initially, because he was focused on trying to locate the suspects and their vehicle. (*Id.*, p. 84.) Other officers were locating the female passenger and the children, and Officer Price had his audio-recorder on the entire time. (*Id.*, p. 82.) Vogt noticed Petitioner sweating profusely in 60-degree weather and stopping in mid-sentence when another officer walked around Petitioner's car and looked into the windows. Vogt's training led him to believe that there might be something in the car that Petitioner did not want discovered. (*Id.*, pp. 90-92.) Petitioner denied Vogt's request to search the vehicle, so Vogt requested a drug dog. (*Id.*, p. 93.)

Vogt testified that he was working on writing up the driving citation and was communicating with the other officers about what had happened while awaiting arrival of the drug dog. As soon as Officer Lindley arrived with the drug dog, he put it to work sniffing the exterior of the car. (*Id.*, p. 95.) Vogt testified that everything that was happening and being investigated by all the different officers was not completed before the dog alerted that there were drugs in the car. (*Id.*, pp. 111-12.)

The state district court determined the time frames and credibility of the witnesses from the three different audio-recordings made during the stop, search, and arrest. The

court found that Petitioner's and Ms. Price's testimony were not credible, because they did not match the tapes. For example, Ms. Price thought that 20 minutes went by between her two handcuffing incidents, but the tapes reflected only 4 minutes. (State's Lodging A-5, pp. 155-58.) Similarly, Petitioner started screaming 32 minutes into the tape, a point in time when he had already been arrested for the contents of the search of his car. (*Id.*, p. 159.) The tapes reflected the depth and breadth of the investigation that was taking place.

The trial court found that "all credible evidence presented at the hearing supports a finding that the detention in this case was not extended for the purpose of applying a drug dog to Mr. Thies' car" and that "[t]he investigation in this case was multifaceted and was not complete prior to the drug dog's application to the car. (State's Lodging A-1, p. 126.) Therefore, the motion to suppress was denied. (*Id.*)

Petitioner also appealed the issue not once, but twice, although his second attempt was unsuccessful for failure to bring forward supporting facts. (State's Lodgings B-7, D-7.) Counsel for Petitioner presented his case during direct appeal. Petitioner had different counsel review the facts of his case during the second appeal (the post-conviction matter). On direct appeal, the Idaho Court of Appeals determined that the state district court's findings of fact were supported by substantial evidence. (State's Lodging B-7, pp. 4-5.)

In the Order conditionally granting the dismissal motion, the Court recognized that, to maintain a Fourth Amendment claim, Petitioner must show *that he was not given a full and fair opportunity to present his suppression evidence and argument*. The Court preliminarily concluded that the state court record reflected that Petitioner had ample opportunity to present his evidence and argument, and, moreover, the state court's

findings and conclusions were supported by the record. In the order conditionally

granting the Motion to Dismiss, the Court particularly advised Petitioner that he should

not focus on second-guessing the accuracy of the state court's resolution of the

suppression issues, but he should show particularly that he was not afforded adequate

opportunity to litigate the issues.

### A. Petitioner's Showing

Contrary to the Court's explicit instructions, Petitioner's 104-page Response to the

Court's Order contains little discussion of *whether the procedures were fair*. The

Response recites Petitioner's version of the facts supporting the merits of his motion to

suppress. To challenge the procedures, Petitioner asserts that his lawyer filed a fictitious

brief in support of an amended motion to suppress, his counsel's misrepresentation of the

facts may constitute fraud, the statements contained in the brief were designed to deceive,

and the State's attorney knowingly provided the court with false information. (Dkt. 23, p.

5.)

In reviewing similar case law in the Ninth Circuit, this Court found that the United

States District Court for the Northern District of California adjudicated nearly the same

issue, concluding:

> The question Petitioner raises is whether the attorneys' alleged
> presentation of false information to the Court constitutes the lack of
> procedures to fully and fairly litigate the suppression claims. Petitioner's
> allegation that perjured testimony was offered by the state at his
> preliminary hearing does not change this conclusion. Such a claim does not
> call into question the adequacy of the state hearing procedures with which
> petitioner was provided. Rather, the use of perjured testimony states an
> independent claim for a violation of due process. *See United States v.
> Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*Carr v. Runnels*, No. C 03-1369 PJH (PR), 2007 WL 133971, at *5 (N.D. Cal. Jan. 16, 2007), *aff'd sub nom. Carr v. Kramer*, 303 F. App'x 426 (9th Cir. 2008).

The Court agrees with the reasoning and outcome of *Carr v. Runnels*. When counsel for the state offers perjured testimony, a petitioner may pursue a Fourteenth Amendment due process claim. When petitioner's own counsel offers false information to the detriment of his or her own client, that is a Sixth Amendment ineffective assistance of counsel claim. Neither presents a threshold Fourth Amendment claim focused on unfair court procedures.

Petitioner also asserts, without any factual support, that because the state court judge said she had prepared a timeline, she must have relied on extra-record evidence or otherwise acted to render the procedures surrounding the suppression hearing unfair. However, the transcript makes clear that the judge took judicial notice of  the audio tracks of the officers' recording devices and the 911 call provided by the parties and said she "actually listened to all of them and took notes." (State's Lodging A-5, p. 5.) She further explained, "As the parties are aware, I try to spend a lot of time going through all of the material. That's why I like to get the tapes ahead of time because that helps me in preparing for the hearing." (*Id*., p. 155.) The judge's preparation of a timeline from the evidence submitted by the parties does not show that anything procedurally improper occurred prior to or during the suppression hearing. Petitioner's allegation in this respect is merely speculative.

The Court concludes that Petitioner has not met his burden to show that he had an inadequate opportunity to litigate his Fourth Amendment claims in state court. To the contrary, as outlined above, Petitioner was afforded a full hearing on the Fourth Amendment issues. While Petitioner alleges that lawyers on both sides of the case provided false information to the Court, Petitioner has not shown that the procedures themselves were unfair or amounted to an inadequate procedure. Petitioner's claims were also thoroughly probed on appeal, with the aid of defense counsel.

For these reasons, the Fourth Amendment claim will be dismissed with prejudice for failure to overcome the *Stone v. Powell* threshold.

### 4. Review of Claims 2 and 3

#### A. Standard of Law governing Procedural Prerequisites to Habeas Relief

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but

the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991).

If a claim has not been properly exhausted in the state court system, the claim is considered "procedurally defaulted." *Coleman,* 501 U.S. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment right to effective assistance of counsel may, under certain circumstances, serve as a cause to excuse the procedural default of other claims. *Murray v. Carrier*, 477 U.S. at 488. However, an allegation of ineffective assistance of counsel will serve as cause to excuse the default of other claims *only* if the ineffective assistance of counsel claim itself is not procedurally defaulted or, if defaulted, a petitioner can show cause and prejudice for the default. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). In other words, before a federal

court can consider ineffective assistance of counsel as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court.

As to a related but different topic–errors of counsel made on post-conviction review that cause the default of other claims–the general rule on procedural default is that any errors of a defense attorney during a post-conviction action *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. at 752. This rule arises from the principle that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

*Martinez v. Ryan*, 566 U.S. 1 (2012), established a limited exception to this general rule. That case held that inadequate assistance of post-conviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. To demonstrate ineffective assistance of PCR counsel, a petitioner must show that a defaulted ineffective assistance of trial counsel claim is "substantial," meaning that the claim has "some merit." *Id*. at 14. To show that a claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id*.; *see Strickland v. Washington,* 466 U.S. 668, 695-96 (1984).

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.

To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993), meaning that the new evidence presented shows "it is more likely than not that no reasonable juror would have found Petitioner guilty." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence that "may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). The evidence supporting the actual innocence claim must be "newly presented" evidence of actual innocence, meaning that "it was not introduced to the jury at trial"; it need not be "newly discovered," meaning that it could have been available to the defendant during his trial, though it was not presented to the jury. *Griffin v. Johnson*, 350 F.3d 956, 962–63 (9th Cir. 2013).

### B. Discussion of Procedural Default

Claim 2 is an alleged "Violation of the Sixth (6) Amendment of the Constitution to wit; Ineffective Assistance of Counsel." (Dkt. 1, p. 4.) Claim 3 is a "Violation of the Fourteenth Amendment and Fifth Amendments to wit; Violation of Due Process." *Id.*

Because he had no attorney on appeal (after his attorney withdrew for lack of an arguable

issue to appeal), Petitioner filed only a one-paragraph argument in his post-conviction

appellate brief, as follows:

> The district court emphasizes the latter two (2) prong test in
> Strickland v. California, and Idaho v. Mitchell. Cited in it's
> Order Dismissing Petition as it pertains to prejudice. (order
> dismissing petition, p. 6, line 16-19).  It should be obvious to
> the court that ineffective assistance of counsel in a hearing on
> a motion to suppress evidence is for all extents and purposes
> prejudicial.  Therefore, the appellant-petitioner cannot derive
> any other conclusion than no evidence equates to no
> conviction.

(State's Lodging D-4, p. 2 (verbatim).)

While this argument appears to focus on the prejudice prong of the ineffective

assistance of counsel test—similar to Claim 2—the Idaho Court of Appeals refused to

consider the merits of Petitioner's claim, because he "failed to provide th[e] Court with

any evidence that his attorney's performance was deficient" and provided "no more than

a conclusory allegation that he was prejudiced by his counsel's deficient performance."

(State's Lodging D-7, p. 3.) The Idaho Court of Appeals determined that Petitioner had

waived his issues on appeal because he provided no authority or argument to support his

claims, citing *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Circuit 2001) ("federal *Zichko*

case"), in support of the finding of waiver. (*Id.*, p. 2.)

*State v. Zichko*, 923 P.2d 966, 970 (Idaho 1996) ("state *Zichko* case"), established

the principle that the Idaho appellate courts generally will not consider claims or issues

that are not supported by argument or authority. In the federal *Zichko* case, the Ninth

Circuit held that the state *Zichko* case constituted an adequate and independent state procedural rule. *Zichko v. Idaho*, 247 F.3d at 1021.

As discussed above, Petitioner has provided no evidence that he filed a petition for review with the Idaho Supreme Court requesting review of the post-conviction claims after the Idaho Court of Appeals rejected them on appeal.

Based on the foregoing facts, the Court preliminarily concluded that Petitioner's second and third claims were procedurally defaulted for two reasons. First, the failure to support a claim with argument and authority is a state procedural bar. Second, the failure to file a petition for review is yet another procedural bar. Nothing Petitioner has submitted has changed the Court's mind as to the procedural default of these claims. Therefore, the Court turns to whether Petitioner has shown either that he can meet the cause and prejudice standard or that he is actually innocent, as defined above.

### C. Discussion of Cause and Prejudice

To establish "cause," Petitioner must point to an external reason that prevented him from either (1) fully briefing his claims in the Idaho Court of Appeals action; or (2) filing a petition or review with the Idaho Supreme Court. While the Court recognizes Petitioner's pro se status on his appeal before the Idaho Court of Appeal, that status came only after an experienced criminal defense attorney, Dennis Benjamin, scoured the record for an arguable claim to make on appeal. He found none. The Court has had much experience over the years with Mr. Benjamin, who is extraordinarily creative in finding and making argument on claims on behalf of his clients. In any event, regardless of the type of lawyer Petitioner was assigned on his post-conviction appeal, no petitioner has a

federal constitutional right to effective assistance of counsel during state post-conviction proceedings—which means that errors of post-conviction counsel cannot serve as a basis for cause to excuse Petitioner's procedural default of his other federal claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

Looking at these facts from a different angle, the Court finds that Petitioner has brought forward nothing showing that the mere fact of Mr. Benjamin's withdrawal from the case caused Petitioner's failure to brief his claims pro se in the Idaho Court of Appeals action or failure to file a petition for review.

Pro se status alone does not constitute cause. *See Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir.1986) (holding that neither ignorance of the legal process nor illiteracy constitutes cause for a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (1988) (holding that a mental condition and reliance upon jailhouse lawyers does not constitute cause). Therefore, the fact that Petitioner was proceeding pro se—and the facts that he did not include facts and argument in his Idaho Court of Appeals' briefing and did not file a petition for review—do not excuse the default of his claims. Each year hundreds of prisoners proceed pro se and follow the Idaho courts' rules for presenting claims properly to the appellate courts. Nothing else in the record points to an adequate cause to excuse the default of Petitioner's claims.

Petitioner has made little or no effort in his 104 pages to make any "cause" argument, and the Court's liberal review of the record reveals no factual support for applying "cause." Therefore, the Court does not reach the prejudice prong of the "cause and prejudice" exception test.

### D.  Discussion of Actual Innocence

Petitioner has not made a clear and comprehensive actual innocence argument, even though he was provided with the legal standard for doing so. At trial, Petitioner's counsel argued that none of the drugs or drug paraphernalia found in the vehicle Petitioner was driving bore his fingerprints, and that the State's case failed for lack of a causal link between Petitioner and the drugs and paraphernalia.

The evidence at trial showed the following. The car in which the drugs were found was registered in Petitioner's name. (State's Lodging A-2, p. 159.) Petitioner admitted to officers that he had driven his car to the high school, where he parked and police were called to the scene. (Dkt. 23-6, p. 6.)

Officer Daniel Vogt testified at trial that Petitioner seemed frantic and confused when Vogt ordered him to come to the police car and put his hands on the hood. Petitioner seemed like he was going to wander away, and he finally complied when Vogt yelled at him. (State's Lodging A-2, p. 76.) When Sergeant Mark Taylor arrived on the scene and started walking around Petitioner's car, Petitioner stopped talking in mid-sentence and started sweating profusely. (*Id.*, p. 87.)

Petitioner was handcuffed and placed in the backseat of the car. Vogt sat down in the front seat to write Petitioner a citation for driving without privileges. Vogt "felt the car moving around a lot, and [he] felt [Petitioner] fidgeting around and moving around inside the back of the car." (*Id.*, p. 90.) Shortly thereafter, Taylor "discovered a small metal container that had been discarded on the ground near the open door where [Petitioner] was sitting in the back of the car." (*Id.*, p. 91.) The metal container held some

marijuana, half-smoke joints, and three baggies of methamphetamine. Vogt testified that a Crown Royal bag that contained the sixteen packages of methamphetamine was found near the same area Petitioner was standing when Vogt first saw him. (*Id*., p. 167.)

As to the injury-to-child charges, the State simply had to show that Petitioner had the care or custody of his teenaged stepsons in his car at the same time he had the methamphetamine obviously intended for trafficking in the car. The State also had to show that Petitioner willfully caused or permitted the teens to be place in such a situation that their person or health was in danger. (*Id*., pp. 380-81.) The State presented Detective Kyle Ludwig's testimony to show that possession of a sizeable quantity of drugs posed a great risk of bodily harm to everyone in the car. (*Id*., p. 381.) Ludwig testified that the street value of the drugs was about $2,500, and that the teens were in danger of physical violence, robbery, and secondary health risks if the drugs were used in the presence of the teens. (*Id*., pp. 278-281.)

The Court's review of the record shows that there is sufficient evidence supporting the guilty findings. Petitioner has brought forward no "newly presented" evidence to show that it is more likely than not that no reasonable juror would have found Petitioner guilty. The record does not reflect that Petitioner is actually innocent of his crimes. Accordingly, Petitioner does not qualify for the miscarriage of justice exception to the procedural default rule.

## 5. Conclusion

The Court has reconsidered its decision in the Order conditionally granting the State's dismissal motion on *Stone v. Powell* grounds and procedural default grounds.

Upon reconsideration and review of Petitioner's submissions, the Court is further convinced that the decision is correct and should be made final. Therefore, the Petition for Writ of Habeas Corpus will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 13) is GRANTED. This entire case is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 25, 2019

Honorable Candy W. Dale
United States Magistrate Judge